The judgment of the court was pronounced by
Slidell, J.
Adié obtained a judgment against August Metoyer, which was recorded as a judicial mortgage in the parish of Natchitoches on the 29th April, 1839. On the 4th December, 1843, and the 10th February, 1844, August Metoyer made conveyances of lands and slaves situate in that parish to his wife Melite Anty, in consideration of certain amounts of dotal and paraphernal monies of his wife received and used by him, and for which she had obtained judgment against her husband. In 1844, Adié brought the present hypothecary action, for the purpose of subjecting the property so conveyed' to the payment of his judicial mortgage. A citation was served upon Melite, and an answer was filed by her without the cooperation or authorization of her husband. There was judgment against her in 1844, adjudging the property to be subject to the judicial mortgage in favor of the plaintiff. Upon this judgment execution was issued, the property was seized and sold, and was bought by the plaintiff. Subsequently Melite took an appeal assisted by her husband, and the judgment was reversed upon the ground that the appearance of the wife in court was unauthorized. The cause being then remanded for a new trial, a new answer was filed, in which the defendant alleges her ownership of the property, denies the right of judicial mortgage asserted by the plaintiff, asserts the nullity of the sheriff’s sale made in 1844, and pleads other matters in defence. By a supplemental answer filed in 1849, she pleaded prescription and preemption, and asserted that the judicial mortgage had not been reinscribed before the lapse of ten years from the original inscription.
Upon the subject of inscription, the testimony adduced established that no reinscription of the judgment had been made in any book or books of the recorder’s office. There is in evidence a certified copy of the judgment, at foot of which is the following: “ Reinscribed on the 28th day of April, 1849, and recorded in book-of judicial mortgages, folio —. Signed, Thomas P. Jones Recorder.” But this certificate is incorrect, as is shown by the testimony of the recorder himself, and other witnesses. He testifies that on the 25th April, 1849, he left the town of Natchitoches to go to a distant part of the parish to take an inventory of a succession. That about six miles from the town he met the plaintiff’s agent, who inquired where he was going and when he would return. The recorder told him he could not say, as he was going to take an inventory; but that one Morrow had the key of his office, and he could have access to it. The agent told the recorder he had business at his office, but did not state its nature. The plaintiff’s agent then went to the recorder’s office, where he found Morrow, and stated he wished the judgment reinscribed, presenting a certified copy of it. Morrow, who it seems was not a deputy of the recorder, wrote on the back of the copy the certificate above mentioned as of 27th April, 1849. On the 28th, the plaintiff’s agent met the recorder on his way back to Natchitoches and exhibited the paper. The recorder changed the date from the 27th to the 28th, and signed it. He reached Natchitoches on Sunday, the 29th April, and on Monday deposited the paper in his office; but had never reinsci'ibed the judgment in his books down to the time of the trial.
*633 Our first inquiry is, had Melite Anty once a legal title to the property upon which the plaintiff seeks to enforce the hypothecary action. From the evidence it satisfactorily appears, that when the conveyances of 4th December, 1843, and 10th February, 1844, were made to her by her husband she was his creditor for dotal and paraphernal monies received by him and appropriated to his own use. Under the article 2421 of our'eode, this indebtedness formed a lawful consideration for the conveyance, and authorized the wife thus to contract with her husband for its payment. She took, therefore, at those dates, a valid title to the property in question, subject, however, to the judicial mortgage then existing in favor of Adié, and the risk of his choosing at a future time to exercise his hypothecary recourse against it.
Has this title ever been lawfully divested, or is Melite Anty still the owner of that property? The only pretence of divestiture is found in the sheriff’s seizure and sale under fieri facias issued upon thé* judgment rendered against Melite in 1844, which judgment was set aside by the Supreme Court in 1846. It is said, that if a judgment be executed against a defendant by a sale of his property, and he subsequently obtains, upon devolutive appeal, a reversal of the judgment, the sale stands, and the defendant must follow its proceeds. That such is the ordinary rule is true. See Baillio v. Wilson, 5 N. S. 214. But the rule must be applied within its proper limits, and to those cases where the judgment is not essentially invalid, but involves merely some error of law. It is not proper to extend it to a case of a defendant who, not being sui juris, but affected by a legal incapacity, has not been duly represented or legally present in the proceedings which resulted in the judgment. The rule that the wife when judicially attacked must be aided by her husband, rests essentially upon the same basis as the principle of law which incapacitates the wife to contract without the authorization of her husband. If a wife cannot make a direct alienation of her property without the authorization of her husband, with what propriety can she be bound by a forced alienation effected by means of proceedings in which she was unaided by him ? If it had been proved, that in the progress of the execution or subsequently Melite had acted with the assistance of her husband in appointing an appraiser, bidding at the sale, or doing other acts which might perhaps be construed into a legal affirmance of it, a different question would have been presented. But as the case stands there is nothing to show that she has done any act legally conclusive of her rights.
Being therefore of opinion, that the title which she acquired has not been lawfully divested in the plaintiff’s favor, our next inquiry is, has the plaintiff a judicial mortgage upon the property thus owned by Melite. That such a mortgage once existed is conceded. Has it been extinguished and lost by lapse of time and the failure to reinscribe ?
The argument of the plaintiff is, that the want of reinscription cannot be attributed to the fault of the creditors. But in our opinion this argument is unsatisfactory. The judicial mortgage exists and has vitality only by inscription. It is this which gives the public notice, and establishes a lien against third persons. If there be no inscription, there is no judicial mortgage. It is not what the recorder ought to or might have done, but what he does, that we must look to in order to ascertain the lights of parties. If the public record is considered as the sole standard by which those rights are to be determined, the community-can always know with certainty what conventional or judicial mortgages exist on a man’s property, and can deal with him securely. But if instead of looking to the record, courts let jn proof of unsuccessful diligence of the creditor to ge£ *634 his mortgage recorded, and the remissness or fault of the public officer, all the security and certainty contemplated by our registry system is gone, and a wide door is opened to injustice and frauds. The remedy of the creditor who loses his rights by want of proper inscription is against the officer, in damages. His fault or fraud is not to be visited upon the public. See Civil Code, 3313, 3333, 3357, &e. Succession of Talcour, 4 R. R. 5. 2d Ann. 800, 608.
We consider it also well settled, that the pendency of this suit for the enforcement of his hypothecary .lights, did not dispense the plaintiff from the necessity of reinscription. See Shepherd v. Orleans Cotton Press, 2d Ann. 100. McElrath v. Dupuy, Ib. 520. Hyde v. Bennett, Ib. 799
It is therefore decreed, that the judgment of the district court be reversed; and it is further decreed, that the adjudication made to the said Adié on the 6th July, 1844, by the sheriff of the parish of Natchitoches under fieri facias in this cause, have no effect against the said Melite Anty; that the said Melite Anty be recognized as the lawful owner of the property described in the petition apd in the act of sale to her by August Metoyer, of 4th December, 1843, and 10th February, 1844, and be restored to, and quieted in, the possession thereof, free from any judicial mortgage in favor of said plaintiff. It is further decreed, that the claim of said Melite Anty for damages for the unlawful seizure and detention of said property by said plaintiff be reserved. It is further decreed, that the costs in both courts of this suit against said defendant be paid by the plaintiff.